## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## (SHERMAN DIVISION)

| | |
|---|---|
| IN RE: | **CASE NO. 19-40426** |
| **CFO MANAGEMENT HOLDINGS, LLC,**[1] | **CHAPTER 11** |
| Debtors. | |
| **DAVID WALLACE, CHAPTER 11 TRUSTEE FOR THE BANKRUPTCY ESTATE OF CFO MANAGEMENT HOLDINGS, LLC, et al.,** | **ADVERSARY NO. 21-04018** |
| Plaintiff, | |
| v. | |
| **EASTERN UNION FUNDING, LLC** | |
| Defendant. | |

## DEFENDANT EASTERN UNION FUNDING, LLC'S
## ANSWER TO AMENDED COMPLAINT

Eastern Union Funding, LLC ("Eastern Union" or "Defendant"), the defendant in the

above-referenced adversary proceeding, by and through its undersigned counsel, hereby answers

---

[1] The **Debtors** in these cases, along with the last four digits of each Debtor's federal tax identification number and associated case number, are: **Carter Family Office, LLC** (xx1652, Case No. 19-40432); **CFO Management Holdings, LLC** (xx6987, Case No. 19-40426); **Christian Custom Homes, LLC** (xx4648, Case No. 19-40431); **Double Droptine Ranch, LLC** (xx7134, Case No 19-40429)**; Frisco Wade Crossing Development Partners, LLC** (xx4000, Case No. 19-40427); **Kingswood Development Partners, LLC** (xx1929, Case No. 19-40434); **McKinney Executive Suites at Crescent Parc Development Partners, LLC** (xx2042, Case No. 19-40428); **North-Forty Development LLC** (xx5532, Case No. 19-40430); and **West Main Station Development, LLC** (xx7210, Case No. 19-40433). The Debtors' service address is CFO Management Holdings, LLC, c/o Serendipity Labs, 3201 Dallas Parkway, Suite 200, #24, Frisco, Texas 75034.

the *Amended Complaint* [ECF doc. 13] of David Wallace, Chapter 11 Trustee for the Bankruptcy

Estate of CFO Management Holdings, LLC, et al. (the "Trustee" or "Plaintiff").

I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b). This

Court can hear and determine this matter in accordance with 28 U.S.C. § 157 and the standing

order of reference of bankruptcy cases and proceedings in this District. Venue is proper in this

District under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. §

157(b)(2)(A), (C), (H), (K) and (O). This adversary proceeding is brought in connection with the

above-captioned Chapter 11 bankruptcy case styled *In re CFO Management Holdings, LLC*, Case

No. 19-40426. The bases for the relief sought are found in §§ 544 & 550 of the United States

Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**") and Rules 7001, *et seq.* of

the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

**ANSWER:    This paragraph states conclusions of law to which no response is
required. The to the extent a response is required, admitted, except that Eastern Union
denies that the Trustee is entitled to any relief.**

2.    Plaintiff consents to the entry of final orders by the Bankruptcy Court for all matters

over which this Court has jurisdiction in this proceeding.

**ANSWER:    Eastern Union lacks sufficient information to admit or deny the
allegations in Paragraph 2 of the Amended Complaint. To the extent a response is required,
Eastern Union denies that the Trustee is entitled to the relief sought in the Amended
Complaint.**

II.    PROCEDURAL AND FACTUAL BACKGROUND

A.    *Procedural History*

3.      CFO Management Holdings, LLC ("**CFO Management**" or the "**Debtor**") and its subsidiaries (as listed in Footnote in this Complaint, the "**Subsidiary Debtors**," and together with the Debtor, the "**Debtors**") each filed voluntary petitions under Chapter 11 of the Bankruptcy Code on February 17, 2019 ("**Petition Date**") initiating the above-captioned Chapter 11 bankruptcy case (the "**Bankruptcy Case**").

**ANSWER:    Eastern Union admits only that CFO Management and the entities identified as the Subsidiary Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code on the Petition Date. Eastern Union lacks information to admit or deny that all of the Subsidiary Debtors are direct or indirect subsidiaries of CFO Management and such allegation is, therefore, denied. The Debtor did not identify Eastern Union as a creditor or provide Eastern Union notice.**

4.      On April 10, 2019, the United States Trustee for the Bankruptcy Case filed a notice of the appointment of David Wallace as Chapter 11 Trustee for the Debtors' estates (the "**Trustee**"). [Docket No. 143].[2] On April 24, 2019, the Court entered its order granting the United States Trustee's application to approve the appointment of David Wallace as Chapter 11 Trustee. *See* Docket No. 153.

**ANSWER:    Admitted; however, the Trustee did not identify Eastern Union as a creditor or provide Eastern Union notice.**

5.      On August 15, 2019 the Court entered an order substantively consolidating the Debtor and Subsidiary Debtors and their estates for all purposes under the name and case of the Debtor, CFO Management Holdings, LLC [Docket No. 248].

**ANSWER:    Eastern Union admits only that the Court substantively consolidated the Debtor and the Subsidiary Debtors and their estates pursuant to an August 15, 2019**

---

[2] Unless otherwise specified, all docket references refer to entries in the docket of the above-captioned main bankruptcy case, Case No. 19-40426.

order. **Because that order limits the effects of the substantive consolidation in certain ways,**
**including on liens held by creditors of the Debtor and Subsidiary Debtors, Eastern Union**
**denies that such substantive consolidation is "for all purposes." Furthermore, Eastern Union**
**denies receiving notice of the Order.**

6.      On January 13, 2021, the Court entered its Findings of Fact, Conclusions of Law and
Order Confirming Chapter 11 Trustee's Second Amended Plan of Reorganization for debtor CFO
Management Holdings, LLC (with Technical Modifications and Certain Settlement Language)
[Docket No. 663] confirming the Plan of Liquidation proposed by the Trustee [Docket No. 659].

**ANSWER:** **Admitted; however, Eastern Union denies receiving notice of either the**
**Second Amended Plan of Reorganization or the Order Confirming the Plan of Liquidation.**

7.      On February 17, 2021 the Trustee filed an original complaint initiating the above-
captioned adversary proceeding (the "**Complaint**").

**ANSWER:**      **Admitted.**

8.      On June 15, 2021 Defendant Eastern Union Funding LLC ("**Eastern Union**") filed a
motion to dismiss [Adv. Docket No. 10] (the "**Motion to Dismiss**").

**ANSWER:**      **Admitted.**

**B.**      ***Factual Background***

9.      Each of the substantively consolidated Subsidiary Debtors – including Frisco Wade
Crossing Development Partners, LLC ("**FWC**") and McKinney Executive Suites at Crescent Parc
Development Partners, LLC ("**MES**") – was at one time wholly owned and controlled by Phillip
Carter or by entities that Carter controlled, managed, or owned. The Subsidiary Debtors' businesses
were ostensibly focused on real-estate development, including developing and selling residential and

commercial real estate in Collin and Denton Counties in North Texas and owning and managing a wild-game ranch in Southern Oklahoma.

**ANSWER:**    **Eastern Union admits only that FWC and MES were involved in developing commercial and retail real estate projects. Eastern Union lacks sufficient information to admit or deny the remaining allegations in Paragraph 9 of the Amended Complaint. To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

10.    On or about January 18, 2019, CFO Management was created to hold and manage the underlying assets of the Subsidiary Debtors. Such real-estate assets including the following as of the Petition Date:

- **Frisco Wade Crossing** – a substantially completed retail development located at 5855 Preston Rd, Frisco, Texas 75034 in the name of Subsidiary Debtor FWC

- **Crescent Parc** – a partially constructed office development located at 1400 Coit Rd., McKinney Texas 75071 in the name of Subsidiary Debtor MES;

- **Oklahoma Ranch** – a hunting ranch located on Duncan Road in Ringling, Oklahoma in the name of Subsidiary Debtor Double Droptine Ranch LLC ("**Double Droptine**");

**ANSWER:**    **Eastern Union admits only that Frisco Wade Crossing is a retail development in Frisco, Texas, and Crescent Park is an office development in McKinney, Texas. Eastern Union lacks sufficient information to admit or deny the remaining allegations in Paragraph 10 of the Amended Complaint. To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

11.    Eastern Union is, on information and belief, a brokerage firm located at 10 5th Street, Suite 302, Valley Stream, NY 11581.

**ANSWER:**    **Admitted.**

12.    TBG Funding, LLC is a Delaware limited liability company that was party, as Lender, to two separate Construction Loan Agreements dated July 31, 2018 by and between TBG and Borrowers FWC and MES, under which TBG provided loans to FWC and MES in the amounts of $8.6 million and $7 million (each a "**TBG Loan**" and, together, the "**TBG Loans**"). In exchange for the TBG Loans, Carter and certain entities he controlled granted security interests to TBG (encumbering previously unencumbered assets of MES and FWC) and executed guaranties in favor of TBG.

**ANSWER:    Eastern Union admits only that TBG made loans to borrowers FWC and MES in or about the amounts alleged, and on information and belief, that the borrowers provided security for the loans. On information and belief, Eastern Union denies the allegation in Paragraph 12 of the Amended Complaint that the properties were unencumbered. Eastern Union lacks sufficient information to admit or deny the remaining allegations in Paragraph 12 of the Amended Complaint. To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

13.    Mordechai Beren, a Managing Director of Eastern Union, brokered the TBG Loan transaction as well as the CPIF Loan transaction (described below) for Eastern Union.

**ANSWER:    Admitted.**

14.    Bob Guess was a radio personality who managed or controlled Texas First Financial ("**TFF**"), Texas Cash Cow, LLC (a Delaware limited liability company), and North Forty Development, LLC (a Delaware limited liability company).[3] He was also a salesperson for TFF and was one of Carter's co-conspirators in a scheme in which investors were defrauded. On July 3, 2018

---

[3] Through similar in name, this entity is separate from Subsidiary Debtor North-Forty Development LLC, a Texas limited liability company ("**North Forty**").

– at the end of a publicized trial and less than a month before TBG closed on the TBG Loans with Carter and his companies – Bob Guess was sentenced to 12 years in prison for securities fraud.

**ANSWER:** **Eastern Union lacks sufficient information to admit or deny the allegations in Paragraph 14 of the Amended Complaint. To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

15.     As President of the Subsidiary Debtors (including MES and FWC), Philip Carter participated in a massive years-long multi-million-dollar consumer-fraud scheme. He was aided and abetted in this scheme by brokers and lenders – including Eastern Union – who were all too eager to enrich themselves without regard to Philip Carter's and his confederates' past actions in defrauding senior citizens.

**ANSWER:** **Eastern Union lacks sufficient information to admit or deny the first sentence in Paragraph 15 of the Amended Complaint. As to the remainder of the allegations in Paragraph 15, denied.**

16.     Starting in or before July 2015 and continuing through at least February 2017, Carter raised over $40 million from over 300 investors in several states, most residing within North Texas, through the solicitation of real-estate investments by way of materially misleading statements and omissions. Carter then misappropriated some such investor funds to pay off personal tax liens, fund his lifestyle, and make Ponzi payments to some investors.

**ANSWER:** **Eastern Union lacks sufficient information to admit or deny the allegations in Paragraph 16 of the Amended Complaint. To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

17. The scheme worked like this: Carter, soliciting funds with or through alleged "brokers" TFF (led by Carter's sales agent Bob Guess), received funds from vulnerable individuals, often people in or approaching retirement, to whom they sold short-term, high-yield promissory notes issued by a number of shell companies that were misleadingly named to confuse investors. Investors were told they were investing in Carter's real-estate-development companies and that their investment were backed by hard assets from legitimate real-estate-development projects, including in North-Forty, a supposed "sure thing" developer of commercial properties in Frisco and surrounding areas. Investors were given promissory notes purportedly entitling them to a return of between nine and twelve percent.

**ANSWER:** **Eastern Union lacks sufficient information to admit or deny the allegations in Paragraph 17 of the Amended Complaint. To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

18. Many of the statements made in soliciting investors were materially false and misleading. Promissory notes given to investors were not secured and were in the name of shell companies with names nearly identical to the names of Carter's actual real-estate companies, but with no underlying assets. In fact, even North-Forty did not hold title to any of the real-estate developments or, upon information and belief, controlling interest in the entities that held such titles. Although the investments in North-Forty and related entities were touted to prospective investors as "low risk," it was not revealed to investors that they actually relied on the success of each link of a long chain of real-estate-development projects for payment.

**ANSWER:** **Eastern Union lacks sufficient information to admit or deny the allegations in Paragraph 18 of the Amended Complaint. To the extent a response is required,**

**Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

19.     Although Carter did, in fact, develop some real-estate projects, he also, upon information and believe, misappropriated investor funds to pay off an over-$1.3 million personal IRS tax lien, make Ponzi payments to other investors, and operate the Double Droptine ranch.

**ANSWER:     Eastern Union admits only that Carter developed real estate projects, including the projects for which certain of the so-called Subsidiary Debtors sought construction funding through the legitimate and legal commercial services of Eastern Union. Eastern Union lacks sufficient information to admit or deny the remaining allegations in Paragraph 19 of the Amended Complaint. To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

20.     On May 17, 2016, the United States Attorney's Office served Phillip Carter with a letter informing him that he was the subject of a federal investigation for money laundering, mail fraud, wire fraud, loan fraud, and securities fraud.

**ANSWER:     Eastern Union lacks sufficient information to admit or deny the allegations in Paragraph 20 of the Amended Complaint. To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

21.     At the end of August 2016, the Texas State Securities Board issued an Emergency Cease and Desist Order against TFF, Guess, and other Guess-related entity. The Cease and Desist Order noted, among other things, that "[a]t least $875,000.00, and perhaps as much as $1.4 million, of investor funds placed with North-Forty and companies associated with it, were expended for the benefit of the company's principal [Carter] to cover a $1,391,064.88 federal tax lien that was

outstanding as of April 2016." The TSSB obtained search warrants to obtain the books and records of Carter himself and at least five of the companies involved in his fraudulent scheme, including borrowers FWC and MES.

**ANSWER:    Eastern Union lacks sufficient information to admit or deny the allegations in Paragraph 21 of the Amended Complaint. To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

22.    On or about January 20, 2017, Carter and some of the Debtors filed a state-court interpleader action in Collin County ostensibly to interplead money into the state court for court-supervised payments to investors, Case No. 219-00305-2017, *Texas Cash Cow Investments, Inc., et al. v. Texas First Financial, LLC, et al.*, 219th District Court, Collin County, Texas (the "**Interpleader Action**"). In this action, Carter and his co-plaintiffs stated that they were in possession of funds to which TFF had a contractual claim but acknowledged that such funds were actually the likely property of investors.

**ANSWER:    Eastern Union lacks sufficient information to admit or deny the allegations in Paragraph 22 of the Amended Complaint. To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

23.    One part of Carter and Guess's scheme involved two commercial construction projects in North Texas. In October 2015, Subsidiary Debtor MES and Subsidiary Debtor FWC were formed. On December 14, 2015, MES entered into a construction agreement with Crossland Construction ("**Crossland**") to build Crescent Parc, and on February 22, 2016 FWC entered into a construction agreement with Crossland to build Frisco Wade Crossing.

**ANSWER:   Eastern Union admits only that MES and FWC each sought to construct certain real estate developments, and that Crossland for some period of time acted a general contractor. As to the remainder of the allegations, Easter Union lacks sufficient information to admit or deny the allegations in Paragraph 23 of the Amended Complaint. To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

24.     Things did not go well with Crossland (partly related to the MES and FWC projects, but also related to problems that led to litigation in connection with another project known as Prosper Business Park owned by another Carter-controlled entity). For example, on or about December 19, 2016, Carter caused a check to be issued to Crossland Construction Company, Inc. for the purchase of labor and material on Frisco Wade Crossing and Crescent Parc in the amount of $6,040,581.22, which was returned due to insufficient funds. As a result of this failure on the part of FWC and MES to pay this debt as it came due, on March 2, 2017 Crossland filed suit against MES and FWC in Collin County District Court for breach of contract and foreclosure of a mechanic's and materialmen's lien.

**ANSWER:   Eastern Union lacks sufficient information to admit or deny the allegations in Paragraph 24 of the Amended Complaint. To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

25.     Undaunted, on May 25, 2017 FWC entered into a construction agreement with a different construction company, EMJ Construction ("**EMJ**"), to continue construction on Frisco Wade Crossing, and MES entered into a construction agreement with EMJ to continue construction on Crescent Parc. Between that time and the time MES and FWC entered into the TBG Loans, MES and FWC ran up millions of dollars of debt to EMJ, failing to pay EMJ debts as they came due.

**ANSWER:** **Eastern Union admits only that FWC and MES entered into construction agreements with EMJ for the construction of Frisco Wade Crossing and Crescent Parc. Eastern Union lacks sufficient information to admit or deny the remaining allegations in Paragraph 25 of the Amended Complaint. To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

26.     During this period, on August 29, 2017 the United Stated filed an Application for a Warrant to Seize Property Subject to Forfeiture in the District Court for the Eastern District of Texas seeking to gain control of the funds deposited in the state-court registry as part of the Interpleader Action and stating that such funds were actually from new investors in continuation of the Ponzi scheme. As a result, the court released the funds into the control of the Unites States Secret Service.

**ANSWER:** **Eastern Union lacks sufficient information to admit or deny the allegations in Paragraph 26 of the Amended Complaint. To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

27.     To finance the payment of the past-due debts MES and FWC had incurred with (among others) Crossland and EMJ, and to provide Carter with the liquidity he needed to continue to operate the Ponzi scheme, MES, FWC, and other Carter-controlled entities first entered into the Eastern Union-brokered TBG Loans on July 31, 2018 and then – just two months later – into an even more ambitious loan transaction (itself an actual fraudulent transfer) with CPIF Lending (also brokered by Eastern Union), under which TBG was paid in full with interest and fees and Eastern Union received an exorbitant "brokerage fee," in furtherance of Carter's Ponzi scheme and at the expense of the individual investors.

**ANSWER:**    **Eastern Union admits only that it brokered loans for MES and FWC with lenders TBG Funding, LLC and CPIF Lending, LLC, which commercial transactions are documented, and that it received a brokerage fee for doing so. Eastern Union denies all other allegations and pejorative mischaracterizations in Paragraph 27 of the Amended Complaint, including that the brokerage fee it received for its services was exorbitant, that it knew or should have known that Carter was running a Ponzi scheme, or that its services were provided at the "expense of individual creditors." To the extent further response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

28.    In connection with the TBG Loans, on August 2, 2018 TBG filed a deed of trust against FWC and MES properties in the amount of $8.6 million. TBG also filed a deed of trust against FWC and MES properties in the amount of $7 million. These deeds of trust (together, the "**TBG Dees of Trust**") encumbered previously unencumbered assets which, but for the TBG Loans and the subsequent CPIF loan transaction two onths [sic] later that were brokered by Eastern Union, would have been available to pay defrauded investors had the loan transactions not occurred.

**ANSWER:**    **Eastern Union denies any implied allegation that FWC or MES owned assets free and clear of any "encumbrances," and furthermore lacks sufficient information to admit or deny the remainder of the allegations in Paragraph 28 of the Amended Complaint. To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

29.    On September 28, 2018, CPIF closed on a $32 million loan transaction with Debtors FWC and MES (the "**CPIF Loan**"). In connection with the CPIF Loan, CPIF executed certain loan and security documents with Carter under which Debtors MES and FWC purportedly gave CPIF a

first lien (replacing TBG) – ahead of the already-defrauded investors – on the most significant

remaining commercial development properties that Carter brought and developed in part with funds

loaned by the investors. Under the terms of the CPIF Loan, FWC and MES were each jointly and

severally liable for the debts and obligations of the other. As a result, FWC and MES (each of which

were already not paying debts as they came due and were being used as essential components of

Carter's Ponzi machinery), to the extent they were not already balance-sheet insolvent, were rendered

balance-sheet insolvent by engaging in the CPIF Loan transaction (in addition to being presumptively

insolvent for being participants in a Ponzi scheme and in addition to being unable to pay their debts

as they come due and in addition to being undercapitalized).

> **ANSWER:**   **Eastern Union admits only that CPIF closed on a $32 million loan**
> **transaction involving at least Debtors FWC and MES on or about September 28, 2018.**
> **Eastern Union lacks sufficient information to admit or deny the remaining allegations in**
> **Paragraph 29 of the Amended Complaint. To the extent a response is required, Eastern**
> **Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

30.     The high costs associated with the CPIF Loan, including the large payment made to

Eastern Union – so soon after FWC, MES, and other Debtors had secured financing from TBG – left

FWC, MES, and other Debtors in a worse financial condition than before the transaction. The result

of the CPIF Loan transaction, including the payment to Eastern Union, was precisely what Carter

(acting as the authorized representative for FWC and MES) intended: to hinder and delay the investor-

creditors as he continued to orchestrate his self-serving fraudulent scheme.

> **ANSWER:**   **Eastern Union denies any alleged implication that its brokerage fee was**
> **unearned, without value, or made without reasonably equivalent value. Eastern Union lacks**
> **sufficient information to admit or deny the remaining allegations in Paragraph 30 of the**

**Amended Complaint. To the extent a response is required, Eastern Union denies that the**

**Trustee is entitled to the relief sought in the Amended Complaint.**

31.     Carter's fraudulent intent (and, thus, the intent of Debtors MES and FWC, which acted

under his direction, authority, and control in entering into the TBG Loans, granting security interests

in the TBG Deeds of Trust, entering into the CPIF Loan, and engaging in the Eastern Union Transfers

(defined below)) [sic] is readily apparent.

> **ANSWER:     Denied.**

32.     From the standpoint of Carter's creditors, MES's and FWC's entering into the TBG

Loan and CPIF Loan transactions brokered by Eastern Union did not provide reasonably equivalent

value to the Debtors,[4] which received enough funds to obtain a reprieve from some of their larger

creditors but not enough to make payments to individual investors. The TBG Loans brokered by

Eastern Union were not made at market rates, as the fees and conditions imposed on the Debtors MES

and FWC and the flow of payments to select creditors at the expense of investors were used in

furtherance of Carter's Ponzi scheme. In sum, Carter and the Debtor entities MES and FWC that he

controlled granted security interests to TBG under the TBG Deeds of Trust, entered into the TBG

Loans, and entered into the CPIF Loan so they could "rob Peter to pay Paul."

> **ANSWER:     Denied.**

33.     And pay Paul they did. For example, with respect to the $8.6 million TBG Loan, TBG

disbursed $3,810,000.00. Of that amount, $813,695.20 did not actually go to the borrowers but rather

was directed to TBG for fees and to various TBG-controlled escrow accounts (including a

$220,000.00 origination fee for TBG). After accounting for those deductions, the net proceeds to the

Debtors were just $2,996,304.80. And of *that* amount, only a hand-picked selection of ***six creditors***

---

[4] Although lack of reasonably equivalent value is not an element of an actual-fraudulent-transfer cause of action, a lack of REV is a "badge of fraud" that a fact-finder can use to infer fraudulent intent on the part of the transferor.

received payments, including **$258,000.00 to the Eastern Union** (the "**First Transfer**") [sic] With respect to the $7 million TBG Loan, TBG disbursed just $4.3 million, only a little over $3.8 million of which went to the Debtors. About a half million dollars of ***that*** amount went to TBG for fees and to various TBG-controlled escrow accounts (including a $210,000 origination fee for TBG). Of the approximately $3.8 million of net proceeds that purportedly went to the Debtors, only a hand-picked selection of ***four creditors*** received payments. Eastern Union was once again at the trough to take **$105,000.00** (the "**Second Transfer**"), and Benchmark Title received over $3.7 million.

**ANSWER:**   **Eastern Union admits only that it received fees in connection with its legitimate services brokering the TBG Loans that permitted MES and FWC to continue constructing real estate developments. Eastern Union denies the pejorative mischaracterization of the brokerage fees it earned or that it was not entitled to compensation for its services. Eastern Union lacks sufficient information to admit or deny the remaining allegations in Paragraph 33 of the Amended Complaint. To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

34.     The many individual investor-creditors, some of whom were asking questions of Debtor representatives about what had happened to their life savings, were excluded from distributions. Thus, the proceeds of the TBG Loans benefited the TBG, a few select preferred creditors, including Eastern Union, and Carter himself, while the investor-creditors were left out in the cold.

**ANSWER:**   **Eastern Union denies that its brokerage fee was a preference or any implied allegation that it did not earn any brokerage fee it received relative to brokering loans with TBG. Eastern Union lacks sufficient information to admit or deny the remaining**

allegations in Paragraph 34 of the Amended Complaint. **To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

35.     As with the TBG Loans, the CPIF Loan two months later did not result in payments to investors who had long been waiting in line for payment. Instead, a few hand-picked creditors – including Carter's defense attorney and other personal creditors of Carter – were preferred while the investors were hindered and delayed. Out of the $32 million CPIF Loan, TBG took nearly $15 million of it; **$960,000.00 went to Eastern Union as a brokerage fee** (the "**Third Transfer**") (after having just received the First Transfer and the Second Transfer under the TBG Loans) (together, the First Transfer, Second Transfer, and Third Transfer constitute the "**Eastern Union Transfers**"); $1.12 million went to CPIF as an origination fee; and another approximately $50,000 went to various other third parties. The high costs associated with the CPIF Loan, including the Third Transfer that Eastern Union received – so soon after FWC, MES, and other Debtors had paid huge fees to obtain financing from TBG – left FWC, MES, and other Debtors in a worse financial condition than before the transaction.

**<u>ANSWER</u>:     Eastern Union admits only that it received a fee for brokering the CPIF Loan. Eastern Union denies that its brokerage fee was a preference or any implied allegation that it did not earn any brokerage fee it received relative to brokering a loan with CPIF. Eastern Union lacks sufficient information to admit or deny the remaining allegations in Paragraph 35 of the Amended Complaint. To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

36.    One example of an investor-creditor whose debt MES and FWC had not paid as it came due and who was hindered or delayed by the TBG Loans, the CPIF Loan, and the Eastern Union Transfers, was Jason Farwell. Mr. Farwell emailed a debtor representative:

> My tolerance level for my life savings has come to bout to an end. The money's ***been tied up for two years longer than it was supposed to be.*** I had a cushion save which I invested in good faith, no I am pay check to pay check. What would you do if you rmoney was taken and not returned? Your life savings? … Why were the other payments able to be made? There is too much uncertainty in all this. [spelling and grammar as in original; emphasis added].

**ANSWER:    Eastern Union lacks sufficient information to admit or deny the allegations in Paragraph 36 of the Amended Complaint. To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

37.    The Debtors themselves acknowledged before closing on the CPIF Loan and engaging in the Eastern Union Transfers that they were doing it for the purpose of paying a few select creditors immediately while forcing the investor-creditors to wait in line (i.e., to hinder or delay payment to those creditors). TBG and Eastern Union would get paid, while the elderly people who had invested their life savings would be told to wait. On September 25, 2018, just days before the CPIF Loan closed, Kelly Carney, the pre-petition President of Commercial Operations for CFO, outlined for CPIF representatives a repayment plan in which CPIF could be paid back quickly, while existing creditor-investors would be hindered and delayed in receiving payment:

> . . . in theory you 32M could be paid back in Jan, and sales could fund the remainder of the projects and it still leaves a surplus to address the ***investor payout over the life of the projects.*** However, its construction, there were delays, sales don't always close when expected . . . I don't think we can ever build as fast as Carter wants to go…which requires capital vs phase approach. I am showing this spreadsheet as this is what Carter understands and looks at so w/e model loan structure needs to be on a monthly cash basis, showing how we could use your money to expedite CP and WM and finish much earlier,

how we pay you back while keeping a surplus for the investor payout. [spelling and grammar as in original; emphasis added].

**ANSWER:    Eastern Union denies any allegation in Paragraph 37 about itself or any implied allegation that it did not earn any brokerage fee it received relative to brokering a loan with CPIF. Eastern Union lacks sufficient information to admit or deny the remaining allegations in Paragraph 37 of the Amended Complaint. To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

38.    Carney also informed CPIF that *he would like to pay back investors* who had lost their life savings and had health problems *at some point* but only if doing so made sound business send: " . . . the investor proceeds are the thorn persay. Having heard their stories of lost life savings, health problems, if no surgery they are going to die, etc……you want to pay them back as soon as can or as many as can but it has to be business sound." [spelling and grammar as in original]. Carney had earlier explained in an email to CPIF's representatives that paying investors, while an aspirational objective in theory, was not a priority for the Debtors: "And based on you pay back requirements then we will know what we have available each month for the TFF investors (there is no set amount, we just try and give people their money back as best and expeditious as we can)." As a representative of Debtors MES and FWC, Carney also expressed the Debtors' disdain for the individual investors in an email responding to one of the investors who was complaining about being hindered, delayed, and defrauded:

> The guy that stole your money is in prison. And you gave it to him and signed a contract with him freely. . . . If you are worried about paycheck to paycheck, then go look in the mirror for blame. . . . All we need from you is your patience and unabashed gratitude.

**ANSWER:    Eastern Union lacks sufficient information to admit or deny the allegations in Paragraph 38 of the Amended Complaint. To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

39.    In addition to the foregoing express admissions of the Debtors' intent to hinder or delay investors, other facts that show Carter (and, thus, FWC and MES) had an actual intent to hinder, delay, or defraud creditors when FWC and MES entered into the TBG Loans, granted security interests to TBG under the TBG Deeds of Trust, and entered into the CPIF Loan (transactions that resulted in Eastern Union receiving the Eastern Union Transfers) include the following: (i) Carter's business associate had been imprisoned for fraud; (ii) Carter and his companies were under criminal investigation by both federal and state authorities for, among other things, money laundering, mail fraud, wire fraud, loan fraud, and securities fraud; (iii) Carter and his companies were embroiled in multiple lawsuits, including at least four in which he was being accused of fraud (in one of which an investor alleged he had been jilted out of $200,000 and described the Ponzi scheme Carter was running in great detail); (iv) Carter's prior lender, Legend Bank, had closed his accounts and asked him to refinance his loan with Legend in September 2016 as a result of Carter's publicly known activities; (v) the TSSB search warrant had stated unequivocally that investor money from defrauded retirees had been diverted into Carter's businesses; and (vii) at the time the TBG Transfers occurred, Carter's arrest on fraud charges was imminent.

**ANSWER:    Eastern Union denies any allegation or implied allegation in Paragraph 39 of the Amended Complaint that it did not earn any brokerage fee it received relative to brokering loans with TBG, CPIF, or both. Eastern Union lacks sufficient information to admit or deny the remaining allegations in Paragraph 39 of the Amended Complaint. To the**

extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.

40.    Predictably, on November 6, 2018, the house of cards Carter had built (with Eastern Union's assistance) collapsed. Based on claims presented by the Texas State Securities Board, Carter was indicted by the Grand Jury of Collin County, Texas on 44 separate counts of securities fraud relating to his conduct between July 1, 2015 and November 6, 2018.

**ANSWER:    Eastern Union denies any allegation or implied allegation in Paragraph 40 of the Amended Complaint that it did not earn any brokerage fee it received relative to brokering loans with TBG, CPIF, or both. Eastern Union lacks sufficient information to admit or deny the remaining allegations in Paragraph 40 of the Amended Complaint. To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

41.    Subsequently, the U.S. Securities and Exchange Commission also filed a complaint against Carter alleging that he and two other individuals raised approximately $45 million from more than 270 noteholders across the United States but that the "notes" were actually backed by unrelated, but closely named, entities that had no assets. The SEC also alleged that Carter misappropriated investor funds, using the funds to finance his own expenses, operate the Double Droptine ranch, and to pay certain investors to perpetuate the alleged fraudulent scheme. Carter was engaged in these activities at the time he entered into the TBG Loans and CPIF Loan and at the time Eastern Union received the fraudulent Eastern Union Transfers in connection with the TBG Loans and CPIF Loan transaction. In questioning by the SEC in connection with their investigation, Carter refused to answer questions, invoking his Fifth Amendment right against self-incrimination. MES and FWC were named as relief defendants in the SEC's case against Carter.

**ANSWER:   Eastern Union denies that it received a fraudulent transfer. Eastern Union lacks sufficient information to admit or deny the remaining allegations in Paragraph 41 of the Amended Complaint. To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

42.     At the time that Debtors MES and FWC: (ii) [sic] made payments to Eastern Union in connection with the TBG Loans; and (ii) effectuated the Eastern Union Transfers, MES and FWC were insolvent or were rendered insolvent as a result of the transactions. Not only were MES and FWC being used by Carter as part of his overall fraudulent Ponzi scheme, MES and FWC each had not been paying their debts as they came due, as is evident from their dealings first with Crossland and then with EMJ.

**ANSWER:   Eastern Union lacks sufficient information to admit or deny the allegations in Paragraph 42 of the Amended Complaint. To the extent a response is required, Eastern Union denies that the Trustee is entitled to the relief sought in the Amended Complaint.**

43.     As a result of FWC and MES making the Eastern Union Transfers, creditors of the Debtors, (including creditors of Debtors FWC and MES) were hindered, delayed, or defrauded, and suffered harm. As recognized in the substantive consolidation of the Debtors' bankruptcy cases, such creditors included hundreds of defrauded investors.

**ANSWER:   Denied.**

**III.   CAUSES OF ACTION**

   **A.   _First Cause of Action: Fraudulent Transfer Under 11 U.S.C. § 548(a)(1)(A) (Actual Fraud) and 11 U.S.C. § 550_**

44.     The Trustee reincorporates the allegations contained in paragraphs 1 through 43 of the Complaint.

**ANSWER:     Eastern Union restates and incorporates by reference its answers set forth in paragraphs 1 through 44 above.**

45.     Debtors MES and FWC made the Eastern Union Transfers in connection with the TBG Loans and the CPIF Loan transaction within two years of the Petition Date, and did so with actual intent to hinder, delay, or defraud entities to which MES and FWC were or became indebted after the date that MES and FWC made the Eastern Union Transfers.

**ANSWER:     Paragraph 45 states conclusions of law to which no response is required. To the extent a response is required, Eastern Union admits that it received payment for legitimate, commercial loan brokerage services it provided to MES and FWC at or about the times alleged in Amended Complaint. Eastern Union denies the remaining allegations of Paragraph 45 of the Amended Complaint.**

46.     By reason of the foregoing, the Trustee sues to avoid the Eastern Union Transfers under 11 U.S.C. § 548(a)(1)(A).

**ANSWER:     Eastern Union denies that the Trustee's allegations in Paragraph 46 of the Amended Complaint entitle him to the relief he seeks.**

47.     By reason of the foregoing, the Trustee sues to recover the Eastern Union Transfers or the value thereof from Defendant Eastern Union under 11 U.S.C. § 550.

**ANSWER:     Eastern Union denies that the Trustee's allegations in Paragraph 47 of the Amended Complaint entitle him to the relief he seeks.**

**B.     _Second Cause of Action: Fraudulent Transfer Under 11 U.S.C. § 548 (a)(1)(B) (Constructive Fraud) and 11 U.S.C. § 550_**

48.     The Trustee reincorporates the allegations contained in paragraphs 1 through 47 of the Complaint.

**ANSWER:**    **Eastern Union restates and incorporates by reference its answers set forth in paragraphs 1 through 47 above.**

49.    Debtors MES and FWC made the Eastern Union Transfers in connection with the TBG Loans and the CPIF Loan transaction within two years of the Petition Date.

**ANSWER:**    **Eastern Union admits only that that it received payment for legitimate, commercial loan brokerage services it provided to MES and FWC at or about the times alleged in the Amended Complaint. Eastern Union denies the Trustee's implied allegations about it or the referenced "Transfers" as alleged elsewhere in the Amended Complaint, including the pejorative mischaracterizations about Eastern Union's services**

50.    Debtors MES and FWC received less than a reasonably equivalent value in exchange for the Eastern Union Transfers.

**ANSWER:**    **Paragraph 50 states conclusions of law to which no response is required. To the extent a response is required, denied.**

51.    Debtors MES and FWC were insolvent on the date of each of the Eastern Union Transfers, or became insolvent as a result of the Eastern Union Transfers.

**ANSWER:**    **Paragraph 51 states conclusions of law to which no response is required. To the extent a response is required, denied.**

52.    Creditors of the Debtors, including creditors of Debtors MES and FWS, were harmed as a result of the Eastern Union Transfers made in connection with the TBG Loans and the CPIF Loan transaction.

**ANSWER:**    **Paragraph 52 states conclusions of law to which no response is required. To the extent a response is required, denied.**

53.     By reason of the foregoing, the Trustee sues under 11 U.S.C. § 548(A)(1)(b) to avoid the Eastern Union Transfers.

**ANSWER:**    **Eastern Union denies that the Trustee's allegations in Paragraph 53 of the Amended Complaint entitle him to the relief he seeks.**

54.     By reason of the foregoing, the Trustee sues under 11 U.S.C. § 550 to recover the Eastern Union Transfers or the value thereof from Defendant Eastern Union.

**ANSWER:**    **Eastern Union denies that the Trustee's allegations in Paragraph 54 of the Amended Complaint entitle him to the relief he seeks.**

**C.**    **_Third Cause of Action: Fraudulent Transfer Under 11 U.S.C. § 544 and Texas Business and Commerce Code 24.005 (a)(1) (Actual Fraud)_**

55.     Plaintiff reincorporates the allegations contained in paragraphs 1 through 54 of the Complaint.

**ANSWER:**    **Eastern Union restates and incorporates by reference its answers set forth in paragraphs 1 through 54 above.**

56.     Under 11 U.S.C. § 544(b)(1) the Trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is avoidable under applicable law by a creditor holding an unsecured claim that is allowable under 11 U.S.C. § 502.

**ANSWER:**    **Paragraph 56 states conclusions of law to which no response is required. To the extent a response is required, Eastern Union denies that the Trustee is entitled to relief.**

57.     Under Texas Business and Commerce Code 24.005(a)(1), made applicable by 11 U.S.C. § 544(b)(1), MES's and FWC's making of the Eastern Union Transfers were fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the Eastern Union Transfers were made.

**ANSWER:** **Paragraph 57 states conclusions of law to which no response is required. To the extent a response is required, denied.**

58.    Debtors MES and FWC made the Eastern Union Transfers with actual intent to hinder, delay, or defraud creditors of the Debtors, including creditors of Debtors MEC [sic] and FWS.

**ANSWER:** **Paragraph 58 states conclusions of law to which no response is required. To the extent a response is required, denied.**

59.    As a result of the Eastern Union Transfers, creditors of the Debtors, including creditors of Debtors MEC [sic] and FWC, were harmed.

**ANSWER:** **Denied.**

60.    By reason of the foregoing, the Trustee sues under 11 U.S.C. §§ 544 and 550 and the Texas Business and Commerce Code § 24.005(a)(1) to avoid the Eastern Union Transfers. The Trustee also asks the Court to award payment by Defendant Eastern Union of the Trustee's attorneys' fees and costs.

**ANSWER:** **Eastern Union denies that the Trustee's allegations in Paragraph 60 of the Amended Complaint entitle him to the relief he seeks.**

**IV.    PRAYER**

**Wherefore, premises considered,** David Wallace, Trustee, respectfully prays that this Court:

a)    enter judgment in the Trustee's favor on all causes of action asserted in this Complaint;

b)    avoid the Eastern Union Transfers in accordance with 11 U.S.C. §§ 544 and 548;

c)    order the Defendant to turn over to the Trustee the Eastern Union Transfers or the value of the Eastern Union Transfers under 11 § 550;

d)    award the Trustee attorneys' fees, costs, and prejudgment and post-judgment interest to the fullest extent permitted by law;

e)    grant such other relief to the Trustee as the Court may deem just and equitable.

**ANSWER:**   **Eastern Union denies that the Trustee is entitled to the relief requested or any other relief.**

## AFFIRMATIVE DEFENSES

Eastern Union sets forth its affirmative defenses below. By setting forth these affirmative defenses, Eastern Union does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to the Trustee. Moreover, nothing stated below is intended to be construed as an acknowledgment that any particular issue or subject matter is relevant. Eastern Union reserves its right to supplement or amend this Answer with additional defenses upon particularization of the claims by the Trustee, or upon further investigation or discovery of the facts related to this matter.

1.      The Complaint fails to state a claim upon which relief may be granted.

2.      The Trustee's claims are barred by all applicable state and federal statutes of limitations.

3.      The Trustee's claims are barred because Eastern Union took any and all transfers in good faith and for value and/or reasonably equivalent value.

4.      The Trustee's claims are barred, in whole or in part, by the equitable doctrines of waiver, laches, unclean hands, *in pari delicto*, and/or estoppel.

5.      The Trustee's claims are barred, in whole or in part, by 11 U.S.C. § 547(c) and other similar doctrines under applicable law, including, without limitation, ordinary course of business defenses, conduit or earmarking doctrines, and new or reasonably equivalent value defenses.

6.      The Trustee's claims are barred in whole or in part by setoff and/or recoupment.

7.      Any losses sustained were not caused by any conduct of Eastern Union.

8.      The Trustee cannot recover the Transfers because they were never property of the

Debtors' estate.

9.      The Trustee has failed to name a required third party or required third parties.

Dated:  July 16, 2021                    */s/ John Kincade*
                                         John Kincade (TX Bar No. 11429600)
                                         **BRESSLER AMERY & ROSS, P.C.**
                                         16475 Dallas Parkway, Suite 555
                                         Dallas, Texas 75001
                                         3700 Buffalo Speedway
                                         Houston, Texas 77098
                                         Telephone:  972-737-6410
                                         Facsimile:   713-403-6410
                                         jkincade@bressler.com

                                         */s/ Katelyn H. Wilson*
                                         Katelyn H. Wilson (*admitted pro hac vice*)
                                         **BRESSLER AMERY & ROSS, P.C.**
                                         2001 Park Place, Suite 1500
                                         Birmingham, AL 35203
                                         Tel : 205-820-8208
                                         Fax : 205-719-0500
                                         Email : kwilson@bressler.com

                                         **ATTORNEYS FOR DEFENDANT
                                         EASTERN UNION FUNDING, LLC**

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2021 a true and correct copy of the foregoing answer was served on opposing counsel via e-mail.


/s/ *John P. Kincade*
John P. Kincade (TX 11429600)